# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 18, 2011

## STATE OF TENNESSEE v. DARREN ALLAN VINCENT

**Appeal from the Circuit Court for Sequatchie County**
**No. 2009-CR-160      Thomas W. Graham, Judge**

---

**No. M2010-02468-CCA-R3-CD - Filed January 20, 2012**

---

The Defendant, Darren Allan Vincent, was convicted upon pleading nolo contendere to misdemeanor assault, sentenced to eleven months and twenty-nine days' confinement, and order to pay a $2500 fine.  On appeal, the Defendant argues that the trial court erred by denying probation and requiring him to serve seventy-five percent of the sentence before becoming eligible for release.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., joined. JEFFREY S. BIVINS, J., filed a concurring opinion.

Howard L. Upchurch, Pikeville, Tennessee, for the appellant, Darren Allan Vincent.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; J. Michael Taylor, District Attorney General; and David Shinn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the Defendant's attacking the victim at her home.  The record on appeal does not contain a transcript of the plea hearing, but the record reflects that the Defendant entered his nolo contendere plea on June 30, 2010.  At the sentencing hearing, Dwight Vincent, the Defendant's stepbrother, testified that the Defendant came to his house on June 17, 2009.  Mr. Vincent lived with his girlfriend of seventeen years, Glenda Pinkerton, and her nineteen-year-old daughter, the victim.  When the Defendant arrived at the house, Mr. Vincent was there with the victim and the victim's boyfriend.  Mr. Vincent stated that he instructed the Defendant to leave several times but that the Defendant stayed and repeatedly threatened Ms. Pinkerton, who was not present, and the victim.  Mr. Vincent

told the victim's boyfriend to call the police, and shortly thereafter, Mr. Vincent saw the Defendant "beat the hell out of" the victim. Mr. Vincent said the Defendant "was over top of her with . . . his knees on her shoulder. He was busting her in the mouth and saying, 'How do you like that, b***h?'" Once the Defendant stopped hitting the victim, he grabbed the victim by the hair and began pounding her head against the pavement. Mr. Vincent said that he picked up the handle of a mattock and hit the Defendant twice across the back but that the Defendant did not stop attacking the victim until Mr. Vincent hit him across the side of the head with the handle, which caused the Defendant to fall into a ditch.

The victim testified that after the Defendant threatened her and her mother, he kicked her dog and poked her in the nose. She said she only remembered getting hit and falling to the ground. She became unconscious at some point in the altercation. She said that as a result of the assault, she had a knot on the back of her head, her eyes were "messed up," her front tooth was knocked out, and five teeth were knocked backwards. She had five root canals to repair her teeth. She has also had memory problems since her injury. She said that she no longer had health insurance and that she could not afford counseling or any other type of follow-up or continuing treatment.

Glenda Pinkerton testified that when she arrived at the house, the victim had a large gash in the back of her head and "they had to dig the rocks out of it." She said that after the attack, the victim no longer enjoyed going out with her friends and preferred to stay in her room.

Amy Vincent, the Defendant's wife, testified that she had been married to the Defendant for four years and that they had three children. She said that the Defendant was the only person in their family who was employed and that he earned $440 per week performing automotive repairs. Although she was supposed to receive child support from her former spouse, she had not received any. She said that the Defendant did not drink or use drugs and that he never hit or abused her.

The trial court found that the following enhancement factors applied pursuant to Tennessee Code Annotated section 40-35-114 (2010): (1) the Defendant had a previous history of criminal convictions; (4) the victim was particularly vulnerable because of age or physical or mental disability; (5) the Defendant treated the victim with exceptional cruelty during the commission of the offense; and (6) the personal injuries inflicted upon the victim were particularly great. No mitigating factors were found applicable. In denying probation and an alternative sentence, the trial court found that confinement was necessary to protect society by restraining the Defendant, who had a history of criminal conduct. The trial court also found that confinement was necessary to avoid depreciating the seriousness of the offense. The Defendant was sentenced to the maximum of eleven months and twenty-nine

days' incarceration at seventy-five percent and ordered to pay a fine of $2500. This appeal followed.

The Defendant contends that the trial court erred by denying probation and requiring him to serve seventy-five percent of the sentence in incarceration before becoming eligible for release. The State contends that the trial court properly sentenced the Defendant. We note, however, that the Defendant has failed to include a transcript of the plea hearing in the record and hold that this failure precludes a de novo review of his sentence and requires this court to presume that the evidence supported the sentence.

In conducting a de novo review, we must consider (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2010); see State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991); State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

On appeal, the Defendant was required to prepare a record that conveyed a fair, accurate, and complete account of what transpired with respect to those issues that are the bases of the appeal. T.R.A.P. 24(b); State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). The 1989 Sentencing Act, as amended, requires a sentencing court to consider evidence received at the trial. T.C.A. § 40-35-210(b)(1). The evidence supporting a plea and finding of guilt is usually submitted by proffer or stipulation. "For those defendants who plead guilty, the guilty plea hearing is the equivalent of trial . . . ." State v. Keen, 996 S.W.2d 842, 843 (Tenn. Crim. App. 1999).

This court considers the plea hearing transcript to be vital to a de novo review and potential resentencing by this court as required by law. See, e.g., State v. Alfred Gettner, No. E2010-00104-CCA-R3-CD, Sullivan County, slip op. at 6 (Tenn. Crim. App. Aug. 19, 2011); State v. Felix Tamayo, No. M2010-00800-CCA-R3-CD, Davidson County, slip op. at 3-4 (Tenn. Crim. App. May 16, 2011); State v. Gary M. Carter, No. M2006-02341-CCA-R3-CD, DeKalb County, slip op. at 4 (Tenn. Crim. App. Feb. 21, 2008); see also T.C.A. § 40-35-401 (2010). The "'failure to include the transcript of the guilty plea hearing in the record prohibits the court's conducting a full de novo review of the sentence under [Tennessee Code Annotated section] 40-35-210(b).'" State v. Farmer, 239 S.W.3d 752, 756 (Tenn. Crim. App. 2007) (quoting State v. Shatha Litisser Jones, No. W2002-02697-CCA-R3-CD, Madison County, slip op. at 4 (Tenn. Crim. App. July 14, 2003)). No matter how developed a record

may appear, we will never know the full extent unless the plea transcript is included. "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991); see also State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON,  PRESIDING JUDGE